UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MAURICE J. BRYANT,

    Plaintiff,

v.                              Case No: 2:16-cv-747-FtM-38CM

R. MCMANUS and FNU WARNOCK,

    Defendants.
                                     /

## **OPINION AND ORDER**[1]

This matter comes before the Court on Defendants Lt. R. McManus', and Sgt. Warnock's Motion for Summary Judgment (Doc. 45), filed on December 15, 2017. Defendants filed an Amended Statement of Undisputed Facts (Doc. 49), on January 9, 2018. Bryant filed his Response in Opposition (Doc. 52), and Affidavit of Disputed Facts (Doc. 53), on February 21, 2018. Defendants filed a Reply Brief (Doc. 53), on June 13, 2018. The Motions are briefed and ripe for the Court's review.

## **BACKGROUND**

At the time of the incident which gives rise to this case, Bryant was an inmate housed at the Charlotte Correctional Institute (CCI) in Charlotte County, Florida. On Wednesday, September 30, 2015, at sometime between 10:00 pm and 11:45 pm just

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

after the master count of the inmates in the cell block, Bryant was attacked by another inmate, Ronnie Walker.  During the master count, cell doors are locked by the officer in the control booth. Bryant says Walker came to his locked cell door Walker was beating on his door saying he was going to kill Bryant.  After the count is completed the doors are unlocked so the inmates may walk around the cell block.

Lt. McManus and Sgt. Warnoch were not assigned to Bryant's cell block but were checking on the count because the cell block was short staffed. One officer assigned to Bryant's cell block was out sick on September 30, 2015.  There was only one officer in the control booth overlooking the cell block during the assault.  Bryant observed Lt. McManus and Sgt. Warnoch out of his window while they were walking towards his cell block, presumably to help with the count.

Bryant yelled for their assistance stating that another inmate was threatening to kill him.  ([Doc. 1-1 at 5](Doc. 1-1 at 5)).  Upon arrival in the cell block, Sgt. Warnoch asked Bryant the problem.  Bryant informed Sgt. Warnoch that an inmate, later determined to be Ronnie Walker, was threatening to kill him.  Lt. McManus and Sgt. Warnoch asked Bryant who had threatened him and Bryant responded by pointing to a guy watching TV saying there was an argument over the television show "Empire."   However, Bryant did not know Walker's name nor could he describe Walker to the officers, and the inmate Bryant pointed to was not Walker.  Lt. McManus stated that Bryant's complaint was nothing and both officers then left, leaving Bryant's cell door open.

After Lt. McManus and Sgt. Warnoch left, Walker approached Bryant who was standing on the catwalk in front of his cell.  Bryant initially turned to square off and fight Walker.  However, he saw Walker reach into his waistband and pull out something shiny.

Bryant retreated into his cell and attempted to shut the door as he believed Walker had a knife. But, Walker pushed his body in the path of the door and blocked it from being closed. Walker then stabbed Bryant four times in the left shoulder. According to Bryant, Lt. McManus and Sgt. Warnoch returned to his cell within a minute of the attack and broke up the fight.

Bryant avers that Lt. McManus and Sgt. Warnoch endangered his safety by leaving his cell door open after he informed them that an inmate had threatened to kill him. Bryant filed an informal grievance on October 14, 2015, and a formal grievance on November 3, 2015, stating Lt. McManus and Sgt. Warnoch endangered him and called for the camera video to support his claims.[2] Bryant filed this suit.

## **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of showing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).

---

[2] The video evidence called for by Bryant has been erased per CCI policy and no longer exists.

3

In reviewing a motion for summary judgment, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. See *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citation omitted).

## DISCUSSION

Bryant alleges that Lt. McManus and Sgt. Warnoch violated his Eighth and Fourteenth Amendment rights because they were deliberately indifferent to his safety before the assault occurred on September 30, 2015. Although Plaintiff brought his claim under the Eighth Amendment and the Fourteenth Amendment, Plaintiff's claim falls under the Eighth Amendment as the Fourteenth Amendment is applied to pretrial detainees. *Evans v. St. Lucie Cnty Jail*, 448 F. App'x 971, 973 (11th Cir. 2011). But the analysis for deliberate indifference under both the Eighth and Fourteenth Amendments is the same. *Marsh v Butler Cnty. Ala.*, 268 F. 3d 1014, 1024 n. 5 (11th Cir. 2001). And Bryant moves for an injunction against Defendants.

### *(1) Official Capacity Claims*

Bryant sues Defendants in their individual and official capacities. As an initial matter, Defendants are entitled to summary judgment in their official capacities. A suit against a state officer in their official capacity is a suit against the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment prohibits federal suits for damages against state officials in their official capacity unless Congress has abrogated the state's immunity or the state has expressly waived it. *Id.* at

66. Bryant agrees that his official capacity claims are barred by the Eleventh Amendment and therefore, summary judgment is granted for Defendants on Bryant's official capacity claims.

### *(2) Declaratory and Injunctive Relief*

Bryant avers that he has no plain or adequate relief at law and therefore moves for declaratory and injunctive relief. Defendants counter that declaratory relief is not available because Bryant requests it solely for a past injury which fails to satisfy the Court's case-or-controversy requirement.

Where the plaintiff seeks declaratory or injunctive relief, the injury-in-fact requirement insists that a plaintiff "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (*quoting Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir.1999) (citations omitted)). This is because injunctions regulate future conduct only; they do not provide relief for past injuries already incurred and over with. *See Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir.1994). So a plaintiff seeking declaratory or injunctive relief must allege and ultimately prove "a real and immediate—as opposed to a merely hypothetical or conjectural—threat of *future* injury." *Id.* (citation omitted).

Here Bryant does not allege there is an on-going threat against him from Walker or anyone else. Bryant was placed in protective management after the stabbing attack, but testified in his deposition he did not need protective management because prison officials would separate Walker from him in the future. ([Doc. 43-1 at 35-36](Doc. 43-1 at 35-36)). Since Bryant would be separated from Walker, the risk that Bryant will suffer a future injury is too

5

remote and fails to establish the case-or-controversy needed to maintain the claim. As a result, summary judgment is granted for the Defendants on Bryant's declaratory or injunctive relief claim.

### (3) Deliberate Indifference

Bryant alleges that Defendants were deliberately indifferent to the danger posed by Walker when they left his cell door open after he informed them that Walker threatened to kill him. Defendants move for summary judgment asserting that: Bryant cannot establish his theory of liability by the evidence; the account of the incident is not plausible; and he cannot establish the subjective prong of deliberate indifference.

In *Estelle v. Gamble,* 429 U.S. 97, 104 (1976), the Supreme Court established the "deliberate indifference" standard. *McElligott v. Foley*, 182 F.3d 1248, 1254–55 (11th Cir. 1999). The meaning of that term was further clarified by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825 (1994), a case that considered its meaning referring to a prison's duty to protect its inmates from violence at the hands of other inmates. In *Farmer,* the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. However, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that a harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. Further, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question

of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Under *Estelle* and *Farmer,* deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Therefore, summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge: 'since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness. *Id.* (*citing Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir.1999) (quoting *Steele v. Shah,* 87 F.3d 1266, 1269 (11th Cir.1996)). Likewise, besides the subjective awareness of the relevant risk, *Estelle* requires that a plaintiff show more than mere negligence to establish a violation of the Eighth Amendment and defeat a prison official's motion for summary judgment. *Id.* With these principles in mind, the Court considers Defendants' Motion.

*Subjective Knowledge of a Risk of Serious Harm*

In determining subjective knowledge, a court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." *Carter v. Galloway,* 352 F.3d 1346, 1350 (11th Cir. 2003)). The defendant "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the [defendant] must also draw that inference." *Id.* at 1349 (quotation and marks omitted).

The Eleventh Circuit has recognized that "'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.'" *Woodyard v. Ala. Dep't of Corr.*, 700 F. Appx. 927, 933 (11th Cir. 2017) (quoting *Prater v. Dahm*, 89 F.3d 538, 542 (8th Cir. 1996)). Notably, where a plaintiff presents evidence he reported only a vague, generalized fear or problems with other inmates rather than a specific and particularized threat of harm, courts have not hesitated to find the plaintiff's claims insufficient as a matter of law. *See, e.g., Carter*, 352 F.3d at 1349–50; *McBride v. Rivers*, 170 F. Appx. 648, 655 (11th Cir. 2006) (per curiam).

For example, in *Carter*, the plaintiff submitted evidence that prison officials knew the inmate who later attacked him was a "problem inmate" and was roaming the cell he shared with plaintiff like a "caged animal." 352 F.3d at 1349. He further presented evidence he told prison officials that the inmate was "acting crazy," that the inmate intended to "fake a hanging," and that the inmate told the plaintiff he (the plaintiff) would help fake the hanging "one way or another." *Id.* The *Carter* court found these circumstances to be insufficient to create a genuine issue of fact on whether the defendant prison officials actually, subjectively knew of a substantial risk of serious harm to the plaintiff. *Id.* at 1349–50. In doing so, the court noted there was no evidence that the plaintiff explicitly told the prison officials he feared his cellmate or that his cellmate had clearly threatened him. *Id.* at 1349. The court also found that the cellmate's statement that the plaintiff would help him fake a hanging required an inappropriate "inferential leap" for the prison officials to interpret the statement as a threat to the plaintiff. *Id.* at 1350. Last, the court noted that the plaintiff never told prison officials he considered the inmate's statements to be a threat. *Id.* At most, the court said, the prison officials were negligent

8

by failing to separate the inmates, but such was insufficient to justify liability under § 1983. *Id.*; *see also Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x. 763, 770 (11th Cir. 2016) (per curiam) (finding no evidence that the prison official "had any belief, suspicion, knowledge, or inclination that [the inmate] would attack when he did" or that the inmate posed any "particularized threat" to the plaintiff).

In this instance, Bryant only presented vague and generalized information regarding the threat on his life. In his deposition, Bryant states he did not know Walker's name when the Defendants came to his cell. ([Doc. 43-1 at 31](#)). Bryant said that other inmates called Walker by a nickname but he did not know that name. Bryant could not describe Walker and told the defendants he did not know what Walker looked like. ([Doc. 43-1 at 31](#)). Bryant could not tell the Defendants what cell Walker was in or where on the cell block he was housed. ([Doc. 43-1 at 15](#)). Bryant thought Walker was somewhere on the upper tier. ([Doc. 43-1 at 15](#)).

When Defendants arrived at Bryant's cell, he could not point Walker out to them. Bryant did not see him in the cell block saying that Walker was not visible. ([Doc. 43-1 at 31-32](#)). Bryant says the officers thought he was playing or just talking "junk." ([Doc. 43-1 at 32](#)). The Defendants told Bryant they saw no threat towards him. ([Doc. 43-1 at 32](#)).

Bryant's alleged reported threat, like that in *Carter*, fails to reach the specificity required to impute actual knowledge of a substantial risk of serious harm to Defendants. In *Farmer*, a defendant "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also 'draw that inference.'" 511 U.S. at 837. Here, Bryant's report is too generalized and vague for Defendants to draw an inference that Bryant was facing a substantial risk of

serious harm. While Bryant alleged that someone threatened to kill him, he could not identify that person by name, description, or even point him out in the cell block. "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotations omitted). Bryant's claims are insufficient as a matter of law to impute that a substantial risk of serious harm existed to Bryant.

*Causation*

Bryant argues that by leaving his door open Defendants caused his harm because it allowed Walker to come into his cell and assault him. Bryant asserts that the video record of the event would verify his account of the assault. Defendants argue that Bryant cannot establish causation because he could have closed his cell door but instead walked outside and stood on the upper tier catwalk after Defendants departed.

*Video*

Bryant insists there is video of the incident of the entire confrontation that Defendants refuse to produce. Defendants claim the video has not existed for over two and a half years. Defendants argue that Bryant never requested that the video be preserved. Defendants state that under CCI's video retention policy 602.033, all videos are erased after thirty days unless an inmate requests the video to be preserved or a guard is involved in an excessive force incident. ([Doc. 62-1 at 8](Doc. 62-1 at 8)). Defendants note that video cameras run at CCI twenty-four hours a day seven days a week. The cost to maintain the storage of the video for over thirty days would be prohibitive.

Bryant argues that he filed an informal grievance on October 14, 2015, two weeks after the incident occurred on September 30, 2015. Bryant states he noted in his informal

grievance he asked the prison officials to look at the video evidence to support his contention that the Defendants left his door open which allowed Walker to assault him. Bryant said he repeated the video request when he filed his formal grievance on November 3, 2015.

> CCI's video retention policy 602.033 (11) states:
>
>> Requests by inmates for video segments to be retained in excess of thirty (30)- day period in conjunction with **formal grievance submissions** will be evaluated by a staff member designated by the Warden to determine if the video segment specifically requested provides information supportive of the inmate's allegations or not.

([Doc. 62-1 at 8](Doc. 62-1 at 8)) (Emphasis added). While Bryant argues that he asked for the video to be reviewed in his informal grievance, an informal request will not cause the video to be preserved. Instead, under the CCI's policy, video of an incident will be preserved only after a formal grievance has been filed. Here, Bryant's formal grievance was not filed until November 3, 2015, over thirty days after the assault took place on September 30, 2015. Therefore, there is no issue regarding the erasing of the video of September 30, 2015, as CCI followed its policy and procedures regarding video retention.

Further the Defendants assert that leaving the cell door open was not the cause of Bryant's assault. Defendants argue from *Godfrey v. Russell*, 2005 WL 5657037 (W.D. Va. 2015), *aff'd* 667 F. App'x 68 (4th Cir. 2016). In *Godfrey*, plaintiff alleged deliberate indifference against an officer who unlocked his cell door while another inmate, Hyland, waited in front of it to assault him. *Id.* at *4. Hyland had been beating on Godfrey's cell door window and demanding that someone "open this f---ing door." *Id.* at *4. When the officer opened the door, Godfrey came out of the cell and pushed Hylton against a wall hoping other officers would come to his aid, but they did not before other inmates joined

in to assault him. *Id.* at *4. In granting summary judgment for the defendants, the court found Godfrey had admitted that when the officer unlocked his door,

> Godfrey could have stayed in his cell. It is undisputed that if fearful of Hylton, Godfrey could simply have pulled the door inward to reengage the lock to keep the door between himself and Hylton closed and locked. This action would have prevented Hylton or any other inmate from busting into the cell to assault Godfrey. Instead, Godfrey chose to burst out of the cell and make the first physical contact between himself and Hylton. Thus, Godfrey's own actions on July 2, 2013, not the door unlocking practice, created the only substantial risk of harm that existed that night.

*Id.* at *21. Defendants argue that just like Godfrey, Bryant could have retreated to his cell and closed the door once they left. While Bryant did not initiate contact with Walker he did not retreat when he saw Walker approaching, but squared off to fight. (Doc. 43-1 at 39-40).

Bryant went outside his cell to talk to the Defendants about the alleged threats on his life. After speaking with Bryant for about three minutes, Defendants left and proceeded down the stairs to the cell block's floor. Bryant remained outside his cell on the upper tier catwalk. (Doc. 43-1 at 38). Bryant testified that he was not afraid to fight and as Walker approached Bryant squared off to fight. (Doc. 43-1 at 39-40). As Bryant squared off to fight, Walker reached down to his hip and pulled a shiny object from his waist band. (Doc. 43-1 at 42). Bryant believed Walker had a knife and then retreated to his cell. Bryant tried to close the door but Walker was already close enough to push his body in the way and prevent the cell door from closing. (Doc. 43-1 at 44).

Once in the cell, Walker stabbed Bryant four times in the shoulder with a knife. By then, the Defendants returned to the cell and ordered everyone onto their knees. (Doc.

43-1 at 46). Bryant said it all happened fast and that Walker was only in his cell for about a minute before Defendants returned and broke up the fight. (Doc. 43-1 at 45-46).

While Bryant argues that Defendants caused his injuries because they left his cell door open, Bryant was standing outside his cell on the catwalk of his own volition when Defendants left. Bryant made no move to return to his cell even when he saw Walker headed toward him. Bryant could have easily gone back into his cell and shut the door before the encounter with Walker. However, when Bryant saw Walker coming at him instead of running into his cell and closing the door, he squared off and prepared to fight. (Doc. 43-1 at 41). Bryant's own delay in returning to his cell allowed Walker to block the cell door and attack him.

Bryant further testified that Defendants, who had walked downstairs, came back into his cell after about a minute and broke up the fight and prevented further harm to Bryant. Bryant's deposition testimony does not support his allegation that Defendants' deliberate indifference caused his harm. Rather, the facts presented by Bryant's own testimony support the position that Defendants actually intervened to protect Bryant and prevented further harm. The facts support Defendants position that Bryant's own actions caused his harm. Bryant fails to present a genuine issue of material fact regarding his Deliberate Indifference claim and summary judgment should be entered in Defendant's favor.

### *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity. To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir.

13

2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jones v. Fransen*, 857 F.3d 843, 850–51 (11th Cir. 2017) (*quoting Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted)). Here, Defendants satisfied this requirement, as they engaged in the challenged actions while on duty as corrections officers conducting investigative functions into Bryant's yelling.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. *Id.* To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 223. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings. *Maddox*, 727 F.3d at 1120–21 (citation omitted).

To be clearly established, a right must be well-established enough "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks omitted and alteration adopted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate" and thus given the official fair warning that his conduct violated the law. *Id.* (emphasis added); *Coffin v. Brandau*, 642 F.3d 999, 1013

(11th Cir. 2011) (en banc) ("The critical inquiry is whether the law provided [Defendant officers] with 'fair warning' that their conduct violated the [constitutional right].").

Fair warning is most commonly provided by materially similar precedent from the Supreme Court, this Court, or the highest state court in which the case arose. *See Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). However, a judicial precedent with identical facts is not essential for the law to be clearly established. *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). Authoritative judicial decisions may "establish broad principles of law" that clearly apply to the conduct at issue. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1209 (11th Cir. 2007). And occasionally, albeit not often, it may be obvious from "explicit statutory or constitutional statements" that conduct is unconstitutional. *Id.* at 1208–09. In these circumstances, qualified immunity will be denied only if the preexisting law by case law or otherwise "make[s] it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans*, 626 F.3d at 563; *Gates v. Khokhar*, No. 16–15118, 2018 WL 1277395, at *3 (11th Cir. Mar. 13, 2018); *Maddox v. Stephens*, 727 F.3d 1109 (11th Cir. 2013) ("A right may be clearly established for qualified immunity purposes in one of three ways: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'") (citation omitted).

Here Bryant alleges that Defendants violated his Eighth Amendment rights to keep him safe because they left his cell door unlocked after his life was threatened. Therefore, Defendants' deliberate indifference to his safety put him at risk of substantial harm.

However, Bryant's allegations are too vague to support his claim of deliberate indifference. Bryant could not identify the inmate that made the alleged threat by name, or description, or even where the inmate was housed on the cell block. Defendants could reasonably believe that they were not violating Bryant's right to be safe by not locking up in his cell since they could not identify a serious threat given Bryant's vague someone is threatening me. The evidence in the record shows Defendants were acting under color of state law in their official capacities as correctional officers, and Bryant has failed show they violated a clearly established constitutional right by their actions. The Defendants are entitled to Qualified Immunity.

## **CONCLUSION**

Upon review of the record, the Court concludes that, viewing the facts in the light most favorable to Bryant and drawing reasonable inferences in his favor, there are insufficient facts from which a jury could reasonably conclude that Defendants acted with deliberate indifference to a known, substantial risk of serious harm to Bryant. The Defendants' Motion for Summary Judgment is due to be granted.

Accordingly, it is now

**ORDERED:**

Defendants Lt. R. McManus, and Sgt. Warnock's Motion for Summary Judgment ([Doc. 45](Doc. 45)) is **GRANTED**.

1. The case is **DISMISSED** with prejudice.
2. The Clerk of the Court is directed to enter judgment, terminate any pending deadlines and motions, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 29th day of July, 2018.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record
SA: FTMP-2